"Know all men by these presents that we, Michael Boney and Charles Hooks, are held and firmly bound unto Thomas Molton, clerk of the Superior Court of the county Duplin, in the sum of $2,500, to the payment of which well and truly to be made we bind ourselves, our heirs, executors, etc."
The condition of this bond was in these words:
"The condition of the above obligation is such that, whereas the above bounden Michael Boney has prayed a stay of the proceedings in a certain matter lately tried in the county court of Duplin, wherein Stephen Miller, senior, is plaintiff and said Michael Boney is defendant; now, in case the said Michael Boney makes his personal appearance before the judge of the Superior Court to be held for the county of Duplin on the fourth Monday of September instant, and then and there abide by and stand to the judgment of said court, then the above obligation to be void and of no effect; otherwise, to remain in full force and virtue."
The breaches assigned were: (1) that Michael Boney had not abided by or stood to the judgment of the court rendered in the case of Stephen Miller, senior, against Michael Boney, nor Charles (343) Hooks for him; (2) that Michael Boney had not abided by or stood to, neither had he paid, satisfied, or performed the judgment of the court rendered in the case of Stephen Miller against Michael Boney, nor had Charles Hooks for him.
On the trial below the plaintiff proved the execution of the bond, and gave in evidence the judgment in the case of Stephen Miller v. Boney, rendered at March Term, 1822, of Duplin Superior Court, for $682.99, with $303.37 interest and costs. He also gave in evidence an affidavit made by Boney before his Honor, the Chief Justice of the State, as the ground for a prayer of writs of certiorari and supersedeas, setting forth that at April term of Duplin County court Stephen Miller, having the promissory note of Boney, procured Boney to accept the service of a writ issued thereon, returnable, as Boney thought, to the succeeding term of the court, promising Boney that all things should be done rightly and justly, and saying that the suit should be *Page 190 
conducted in a friendly manner, and under these assurances Boney left the court and went home; apprehending, however, that a payment which was not indorsed on the note might not be allowed, Boney employed an attorney of the court to appear for him, but did not inform him when the writ was returnable. Miller caused the writ to be returned at the same term, and obtained a judgment final by default for the whole amount of the note without allowing the payment, and issued an execution which was levied on Boney's property.
The Chief Justice, on this affidavit, granted his fiat, directing the clerk of Duplin Superior Court, upon receiving from Michael Boney bond and security conditioned to abide by and perform the judgment of Duplin Superior Court, to issue a certiorari and supersedeas for the purpose of bringing up the proceedings from the county court of Duplin, and superseding the execution against said Boney.
(344) The plaintiff then gave in evidence the writs of certiorari and supersedeas from Duplin Superior Court, which issued in obedience to the fiat.
The defendant then proved that Michael Boney was taken on a ca. sa. issuing on Miller's judgment, and was regularly discharged under the insolvent laws of North Carolina.
On this evidence a verdict was found for the plaintiff. The defendant moved in arrest of the judgment that the bond declared on contains neither the form nor the substance of bonds required to be given in cases ofcertiorari, nor of the bond ordered to be taken in the fiat of the judge; and that the arrest, imprisonment, and discharge of Michael Boney under the insolvent laws on a ca. sa. issuing on Miller's judgment, was a performance of the conditions of the bond, and, further that if the bond is valid, and under the facts of the case the defendant is liable thereon, then the present is not the remedy given by law.
These reasons were overruled and judgment rendered, whereupon defendant appealed.
The recital in the condition of the bond is (347) sufficient to show that the defendant was apprised of the purpose for which it was given, viz., to obtain a stay of the proceedings which had been had against the principal in the county court. The stay was obtained, the cause was reheard in the Superior Court, the judgment affirmed, and the question arising on this record is, whether the words of the condition, viz., "shall make his personal appearance before the judge of the Superior Court, and then and there abide by and stand to the judgment of the court," impose upon *Page 191 
the defendant an obligation to pay the amount of the sum recovered Had the bond been made payable to the plaintiff in the judgment, I suppose that, according to the principle of Rhodes v. Vaughan,9 N.C. 167, the bond would have been sufficient, although slightly variant from the words of the act relative to appeal bonds, because the law prescribed the responsibility of the obligors in the bonds taken to prosecute appeals. And, indeed, it has been repeatedly decided that if an appeal bond substantially, though not literally, provided for the objects required by law, it should be supported. This, however, must be considered as a voluntary bond, and must stand or fall by its own strength or weakness. By the words, "make his personal appearance," the parties must have understood that the defendant should attend court by himself or attorney and prosecute the certiorari. One of the senses in which the word "abide" is used is "to bear or support the consequences of a thing"; and had it been used (348) without the adverb "by" it might be construed that he would bear the consequences of the judgment rendered in the Superior Court. Succeeded by the adverb, it gives it something of an active signification, and imports not merely that he would suffer or bear the consequences of the judgment, but that he would likewise defend, and support, and maintain it — all partaking of the primary sense of the word, "a firm and steady continuance." A person who shall promise to abide by a judgment would break his promise by refusing to pay it. To "stand to." in common acceptation, signifies to remain fixed in a purpose to abide by a contract or assertion. But in legal parlance it has obtained by long usage, an active and efficient meaning, and imports an act to be done by the party. Thus, if the condition of a bond be "that I shall stand to the award of J. S., and he doth award me to pay 20l. to W. S. by such a day, and on the day I do tender him the 20l., but he doth refuse it," in this case I have sufficiently performed the condition, and the obligation is saved. So again, "if the condition be that I shall stand to the award of J. S., and the award that I shall enter a retraxit in a suit depending between me and the other party, and I do not so, but am nonsuit, or do discontinue my suit, this is no good performance of the condition." 1 Shep. Touch., 373. Awards and judgments bear so near a resemblance to each other that a bond conditioned to "stand to" one could not reasonably bear a different construction from a bond conditioned to "stand to" the other. When, therefore, I test the signification of the terms used in the condition of this bond, either by their general acceptance in common speech or by their strict technical meaning in the language and understanding of lawyers, I cannot escape from the conviction that they bind the defendant to pay the amount of the judgment; for I find it laid down *Page 192 
in the best authorities that although the condition of a bond (349) when it is doubtful shall be taken most favorably for the obligor, for whose advantage it is made, and most strongly against the obligee, yet that a reasonable and equal construction shall be made according to the intention of the parties, although the words tendto a contrary understanding. Dyer, 14, 52. My opinion consequently is that the judgment ought to be affirmed.